BEATRICE DUNBAR ET AL. *v.* LYMAN G. ALDRICH ET AL.

1. DEEDS. *Construction. Intent.*

   In construing a deed the meaning of the writing is to be sought, rather than the intention of the grantor outside of its terms.

2. SAME. *Operative part. Recitals.*

   Where the operative part of a deed is expressed in unambiguous terms, it cannot be controlled by recitals or other parts of the instrument.

3. SAME. *Conflict between recitals and granting clause.*

   Where the recitals of a deed announce a purpose to invest a life estate in the grantee, with remainder to his children, but the granting part conveys the land in fee simple to the grantee and his heirs, the grant controls.

4. ADVERSE POSSESSION. *Statute of limitations. Code* 1892, §§ 2730, 2734.

   Where a person is in open and notorious possession of land, claiming title adversely to all the world, and mortgages the same, and the mortgage is foreclosed and the land purchased at the foreclosure sale by the mortgagee, who at once takes like possession and makes like claim until his death, and such possession and claim are continued by his devisees until the expiration of ten years from the beginning of the mortgagor's adverse holding, all suits for the land, by persons under no disability, predicated of precedent outstanding titles, will be barred by the ten years' statute of limitation.

FROM the chancery court of Jefferson county.

HON. WILLIAM C. MARTIN, Chancellor.

Miss Beatrice Dunbar and others, appellants, were complainants in the court below; Aldrich and others, appellees, were defendants there. From a decree of the court below in defendants' favor the complainants appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Wade R. Young* and *McWillie & Thompson,* for appellants.

In the case at bar there is no conflict of fact, and the material question submitted is whether the rule "that an intention manifested in the recitals of a conveyance will be controlled by the terms of the granting part of the deed" can be applied to the facts of the case without doing violence to settled principles of jurisprudence.

The intent of the grantor is to be effected in all cases, if that intent can be ascertained; and rules of construction are only designed to aid the court when there is doubt as to what the grantor intended.

In modern times technical rules have given way to the more sensible rules of construction, which is, in all cases, to give effect to the intention of the parties, when no principle of law is thereby violated. This intention is to be ascertained by taking into consideration all the provisions of the deed, as well as the relation of the parties to it. 17 Am. & Eng. Enc. Law (2d ed.), 8.

Instruments are to be construed together, if one refers to the other, so as to expressly or impliedly make the other a part thereof. Ib., 10.

This has always been the doctrine of our courts, and is forcibly expressed in the case of *Hart* v. *Gardner,* 74 Miss., 159.

The proper end of all rules of construction is to effect the intention of the parties to the instrument; and the intention of a grantor in a deed is to govern, when it can be ascertained, equally as in the case of other instruments. In arriving at it the entire paper must be considered. Blackstone says that the construction "must be made upon the entire deed, and not upon disjointed parts of it." If clauses are repugnant to each other, they must be reconciled, if possible; and the intent, and not the words, is the principle thing to be regarded. "The technical rules of construction are not to be resorted to when the meaning of the party is plain and obvious. As was well said in *Robinson* v. *Payne,* 58 Miss., 692, the intention must

prevail, whether it is discovered in the first or the last clause of the instrument."

If your honors now hold that because of the use of the technical words "demise, release, and quitclaim unto the said William H. Dunbar and his heirs," the manifest intention of the grantors to give effect and validity to the will of John W. Dunbar, which conveyed the plantation to William H. Dunbar, "to be possessed and enjoyed by him for the term of his natural life, and after his death to be possessed and enjoyed by his children," is defeated by the use of the word "heirs," instead of the word "children," in the deed, you, in effect, announce that hereafter the intent of the grantor is to be ascertained, not from the entire deed, and the relation of the parties to it, and the will and other papers referred to, but from the meaning which the common law implies from the use of technical words in the granting clause, and you necessarily overrule what has been heretofore the settled doctrine of the court.

You have before you the will of John W. Dunbar, conveying the plantation to William H. Dunbar for life, with remainder in fee to his children; you have before you the decree of the court, denying the probate of the devise of the real property, because the will was executed in the presence of only two witnesses; and you have before you the deeds, referring to the will, reciting that John W. Dunbar had devised the property to William H. Dunbar, to be possessed and enjoyed by him for the term of his natural life, and, after his death, to be possessed and enjoyed by his heirs; and declaring the intent of the grantors in the execution of the deeds to be to give effect and validity to the will; and you have the granting clause, "demise, release, and quitclaim unto the said William H. Dunbar and his heirs." You cannot fail to notice that the only variance between the will and the deeds is that the conveyancer, in writing the deeds, used the word "heirs," instead of the word "children," both in recital and in the granting clause, and be-

cause the word "heirs," by implication of law, operates to convey the fee, you disregard the settled doctrine of the court, ascertain the intention of the grantors, not from the entire paper, but from a disjointed part of it. There is nothing, and never has been anything, sacramental in the word "heirs," except that, when not otherwise explained, it operates, by implication of law, to convey the fee.

You find clauses in the deed which are repugnant, if you put the technical construction upon the word "heirs," certainly, but that does not reconcile the repugnancy, but, to the contrary, defeats the expressed intention, both of the testator and of the grantors.

We propound the quære of the distinguished counsel for the appellant, in *Robinson* v. *Payne,* 58 Miss., 690: "If, on its face, there be no sort of difficulty, and no hesitation of mind until you invoke rules of construction, what creates the doubt?" Why, the rules of construction do.

The rule is to ascertain and carry out the intention, if that can be done without doing violence to some "positive rule of law." *Williams* v. *Claiborne,* 7 Smed. & M., 496.

An entire clause in a deed may be rejected, where, from unavoidable necessity, it is required to give effect to the intention of the parties manifested on the face of the whole instrument. *Alton* v. *Illinois Trans. Co.,* 12 Ill., 28.

The grammatical sense of a deed cannot be adhered to when a contrary intent is apparent, and the particular intent will be made to govern the general intent. *Jackson* v. *Topping,* 1 Wend., 388; *Hancock* v. *Watson,* 18 Cal., 137; *Dawes* v. *Prentice,* 16 Pick., 435. General words will be restrained by a particular recital, when such recital is used by way of limitation or restriction. *Moore* v. *Griffin,* 22 Me., 350. If the intention of a deed is clear, any part inconsistent with it will be rejected as false or mistaken. *Emerson* v. *White,* 29 N. H., 482.

Too much stress is not to be laid on the strict and precise meaning of words when the intention is manifest. The con-

struction must be made on the entire instrument. It is said
the premises of a deed will control, if it is impossible to recon-
cile them with the habendum, but the law will rather invert the
words than pervert the sense. 3 Ark., 18. But words repug-
nant and plainly at variance with the general intention of an
instrument should be rejected. 2 N. H., 175; 2 Metc., 41;
1 Dev., 237; 1 Nev., 283; 28 Mo., 478.

What positive rule of law, what principle of jurisprudence,
or what rule of construction is there which requires your
honors to take a single clause of the deed, the granting clause,
and because you find that the conveyancer has used the word
"heirs," instead of the word "children," used in the will, to
disregard all the other recitals of the deed, disregard the will
and other papers referred to, and the relation of the parties to
it, and, instead of reconciling the apparent repugnancy by
giving to the word "heirs" the meaning which the grantors
obviously intended, give to the whole instrument a construction
which is in conflict with every other clause, defeats the manifest
intention of both the testator and the grantors, and makes a
new and different will than that which the grantors declared
their intention to carry into effect?

If we be correct touching the construction of the deed, then
the statute of limitations is out of the case. This is too
plain for argument.

*Reed & Brandon,* for appellees.

The authorities, when properly construed, all give effect to
the operative part of a deed where there is a conflict between it
and the preamble or recitals. Specially so in cases like this,
where years have intervened, and rights of third parties are to be
considered.

In Boone's Law of Real Property, sec. 300, we find: "The
recitals will not be permitted to control the operative parts of
the deed, if the plain intent would be thereby defeated." See
cases cited thereunder in note 3. See also *Schermerhorn* v.

*Negus,* 2 Hill (N. Y.), 335, and *Patterson* v. *Cole,* 25 Wend. (N. Y.), 456.

A party to a deed will not be bound by the recitals of a deed·through which he derives title.　*Wilkins* v. *Dingley,* 29 Me., 73.

Moreover, the evidence in this case indicates that the real intention of all parties was as expressed in the operative parts of the deeds.　It is clear that William H. Dunbar did not consider that he had a life estate only.　Otherwise would he, as an honorable man, have assumed to obtain a large sum of money by mortgaging, not a life estate, but the entire fee? Nor would the careful business man, that the evidence shows L. D. Aldrich, deceased, to have been, have loaned so large an amount on security that death might have terminated the next day.　No matter if the land were as valuable as counsel for appellants would have the court believe, an uncertain life estate is no security for the loan of money.

We quote from the syllabus in *Huntington & Mumford* v. *Havens et al.,* Johnson's Chancery (N. Y.) Reports, vol. 5, p. 22, in which Chancellor Kent rendered the opinion: "A general recital in a deed does not conclude a party, though a recital of a particular fact may estop him."　A recital cannot control the plain words in the granting part of the deed.　As where a deed of assignment by a debtor in trust for his creditors recited that the debtor was desirous to convey his property to secure three of his creditors named in full, and the residue for the benefit of the other creditors, and in the body of the deed the assignment was expressed to be to satisfy those three creditors and three others named, and the surplus to be divided among his other creditors—held, that the three creditors named in the recital were only entitled to be paid ratably with the other three creditors, in proportion to their demand, out of the proceeds of the property so assigned."

After discussing the case, Chancellor Kent, referring to the operative part of the deed, says: "The plaintiffs are put on an equality with the defendants, and there is no distinction made,

or that can be deduced from the trust, in their favor. If the recital in the deed be in any respect repugnant to this equity, as between the parties to this suit, it cannot be permitted to control the operation of the deed. This is a well-settled rule of construction, and there was never a case in which a recital controlled the plain words of the granting part of the deed."

As supporting his opinion, Chancellor Kent then quotes from Bath & Montagu's case, Eng. Ch. Cas., 101, which is almost identical with the case now on appeal before this court, saying, "Lord Chief Justice Holt has declared this rule. This deed, says he, doth say it was made and intended to confirm the will, and yet makes several recitals and limitations contrary to it. Why, suppose it were that it did not recite the will truly, and said the will disposed of the estate so and so, and then adds that it was made to confirm the will, shall this avoid the deed in equity, or make it have another consideration than else it would have? The reciting part of a deed is not at all a necessary part of it, either in law or in equity. It may be made use of to explain a doubt of the intention or meaning of the parties, but it hath no effect of operation. But when it comes to limit the estate, there the deed is to have its effect according to what limitations are therein set forth. That is, when the estate comes to be limited, we look for the limitations, if any, not in the recitals or preamble, but in the deed itself." For Chancellor Kent continues, p. 37: "It is to be observed that Lord Holt spoke in this manner while sitting in chancery, and the lord keeper affirmed what he said, and observed the recitals of a deed are not made the measure of the limitations in it."

The deeds upon which appellants rely cannot possibly make a case stronger than the language of Chief Justice Holt indicates. The deeds from the brothers and sisters to W. H. Dunbar in the preamble recited the will of John W. Dunbar, and their wish to carry its provisions into effect, and then conveyed the estate to William H. Dunbar, in plain and unambiguous terms, without any limitations, and in fee simple.

Clearly in point is the case of *Miller* v. *Tunica Co.,* 67 Miss., 651. Nearly the entire case is applicable.

Counsel for appellants cite various authorities to the effect that in the construction of deeds the intention of the grantors must be sought, but forget that these rules apply only where the intention is not clearly expressed in the operative part of the deed, and that under no circumstances has it been held that the recitals in the preamble control and change the legal effect of the clearly expressed language of the granting clause.

The statute of limitations—ten years—is a perfect defense.

TERRAL, J., delivered the opinion of the court.

The original bill in this case sought to have set off to complainants a one-seventh part of Rustic Lawn plantation, in Jefferson county, to which they claimed a legal title. The original bill was filed July 2, 1897, and it was amended September 28, 1897, by introducing additional matter and other parties to the suit, and it was finally dismissed; but before its dismissal, and on the day thereof, further leave to amend the bill, by making new parties, was requested of the court, and by it denied. Neither by the original bill nor by it as amended were all necessary parties brought before the court as to the relief finally claimed, but at the time of the dismissal of the case the names of all the parties necessary to adjudicate the entire title to the property, in any view of the facts, were named in the bill, and might have been readily brought before the court by the amendment proposed. From the record it appears that the Rustic Lawn plantation was, in 1844, the property of John W. Dunbar, who in that year made his last will and testament, by which he devised said plantation to his brother, William H. Dunbar, for his life, and after his death to his children. But because said will was attested by two witnesses only, it was inoperative to pass real estate, whereupon the brothers and sisters of William H. Dunbar, except Mrs. Martha D. Claiborne, to whom said land descended, out of respect to the wishes

of their deceased brother, as expressed in his last will and testament, executed their several deeds of conveyance of said Rustic Lawn plantation to said William H. Dunbar, and each of them in the recital part of the conveyance declared his purpose to give validity or effect to the will of John W. Dunbar by conveying said plantation to said William H. Dunbar for life, with remainder in fee to his children; but in the granting or operative part of each and all of said deeds a conveyance of said plantation was made to William H. Dunbar and his heirs in fee simple. The contention of appellants, that by construction of law William H. Dunbar took only a life estate, cannot be maintained. It is true, as is said by appellants, that a deed is to be construed *ex antecedentibus et consequentibus;* but it is also a settled rule of construction that the meaning or intention of the grantor is not the object sought, but what is the meaning of the words used by him in making the grant. And especially is it a rule of interpretation of a deed that an intention manifested in the recitals of a conveyance will be controlled by the terms of the granting part of the deed. In *Monypenny* v. *Monypenny,* 9 H. L. Cas., 146, Lord Wensleydale said: "The question is not what the parties to a deed may have intended to do by entering into that deed, but what is the meaning of the words used in that deed—a most important distinction in all classes of construction, and the disregard of which often leads to erroneous conclusions." In *Bailey* v. *Lloyd,* 5 Russ., 344, Sir John Leach, M. R., said: "If the operative part of a deed be doubtfully expressed, there the recital may safely be referred to as a key to the intention of the parties; but, where the operative part of the deed uses language which admits of no doubt, it cannot be controlled by the recital." Romilly, M. R., in *Young* v. *Smith,* 35 Beav., 90, said: "It is of the greatest consequence to keep distinct the different parts of deeds, and to give to recitals and to the operative part their proper effects. I have always held that, where the recitals and operative part of a deed are at variance, the operative part must be officious,

and the recitals inofficious. I do not say inoperative, for the recitals may be useful in explaining ambiguities." In *Walsh* v. *Trevanion,* Patteson, J., said: "When the words in the operative part of a deed of conveyance are clear and unambiguous, they cannot be controlled by the recitals or other parts of the deed." 69 E. C. L., 750. From a consideration of these authorities—and we know of none contradicting them—it must be clear that the several deeds of the brothers and sisters, or of their descendants, conveyed to William H. Dunbar a fee-simple title to Rustic Lawn plantation. The grounds, therefore, upon which the heirs of William H. Dunbar based their claim to the property in controversy were without support in law, and the decision of the chancellor denying an amendment of the bill in order to make them parties thereto is, as we think, correct.

It only remains to consider what interest, if any, the grantees of Mrs. Martha Claiborne have in Rustic Lawn plantation. William H. Dunbar died in 1887, and had, in 1860, conveyed this plantation, by way of mortgage, to secure L. D. Aldrich in the payment of a large sum of money, which mortgage was foreclosed in 1868, when Mr. Aldrich became the purchaser thereof; and during the life of William H. Dunbar, and until the title to the property passed from him by sale under said mortgage, he claimed to be the sole owner thereof, as against Mrs. Claiborne, as well as all others, and since the purchase thereof by L. D. Aldrich, and a deed thereof to him of date June 1, 1870, he and his devisees had been, before suit brought, for more than ten years in the adverse possession and enjoyment of said plantation, claiming the fee against all the world; and we think the title of Mrs. Claiborne, acquired by her as an heir of John W. Dunbar, is long since barred by the statute of limitation of ten years.

*Affirmed.*