### BROOKS v. BROOKS.*

(Division B.    Feb. 14, 1927.)

[111 So. 376.    No. 26225.]

CONTRACTS. *Deeds. There must be meeting of minds of parties to render contract valid; equity will set aside deed fraudulently procured by son from father, who was unable to read and write and who reposed confidence in son; evidence of lack of meeting of minds of parties and fraudulent concealment held to support decree setting deed aside.*

In order for a contract to be valid, there must be a meeting of the minds of the parties to it. And where a father signs a deed, believing that it contains agreements material to the contract, which, in fact, it does not contain, and where he is unable to read and write and reposes trust and confidence in his son in whose favor the deed is made, who procures a different deed from that intended to be made, equity will set it aside.

*Corpus Juris-Cyc. References: Contracts, 13CJ, p. 263, n. 74; p. 264, n. 81; Deeds, 18CJ, p. 232, n. 1; p. 447, n. 46. "Meeting of minds" of parties as essential to validity of contract, see 6 R. C. L. 599; 2 R. C. L. Supp. 161; 5 R. C. L. Supp. 357; 6 R. C. L. Supp. 400.

APPEAL from chancery court of Simpson county.

HON. T. P. DALE, Chancellor.

Suit by E. B. Brooks against H. L. Brooks. From a decree for complainant, defendant appeals. Affirmed.

*May, Sanders & McLaurin,* for appellant.

What title did the complainant have to convey when the second deed was executed without a re-conveyance from defendant to complainant? The rule which our court has established is that where a deed has been once duly executed and delivered, a subsequent surrender and destruction of it cannot divest the estate of the grantee which passed by the deed. *Whitton* v. *Smith,* Freeman's Chancery 231; *Burton* v. *Wells,* 30 Miss. 688. In *Pierce* v. *Garrett,* 107 So. 885, Mr. Justice ANDERSON reviews the Mississippi cases.

It being obvious that the second deed could not be cancelled for breach of the obligations set out in the first deed, the only other ground of cancellation would be fraud, and as above stated, neither the original nor the supplemental bill contains sufficient allegations of fraud.

*W. M. Lofton* and *Bee King,* for appellee.

The contention of appellee is that when he signed this deed he did not understand its provisions, and that he was induced to sign it by appellant for the purpose of defrauding him and placing the land beyond his reach. The court below rendered the only decree that could have been rendered according to the principles of equity and the dictates of humanity. *Hester* v. *Hooker,* 7 S. & M. 768.

Fraud vitiates all contracts. The facts leading up to this transaction show in unmistakable terms that there was a fiduciary and confidential relationship existing between the father and the son in this case. See *Bunch* v. *Shannon,* 46 Miss. 525; *Mortimer et al.* v. *Hanna,* 82 Miss. 645, 35 So. 159.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed a bill in the chancery court to set aside and cancel the conveyance of certain lands executed by himself and wife to the appellant on the 29th day of October, 1924. There was a decree by the chancery court sustaining the relief prayed for in the bill, from which decree this appeal is prosecuted.

The appellee, it appears, was the father of the appellant and other children. He and his wife lived alone, and being afflicted with heart trouble and unable to do anything, he needed the care and protection of some of his children. Therefore an agreement was entered into by the appellant and the appellee that the appellant would move on the place and live with the appellee (his father) and his wife, provide for them, and give them the necessary care and attention; that the lands owned by the the appellee and occupied by him, described in the bill, would be deeded to the appellant, to take effect after the death of the grantors (the appellee and his wife), provided that, after the death of the grantors (appellee and his wife), appellant would pay to the daughter of appellee the sum of two thousand dollars out of the proceeds of the place or money raised by him for that purpose. An attorney was sent for, who prepared a deed embodying this agreement of the parties and expressly providing:

"That this deed is not to take effect until after the death of both of the grantors, but it is understood and so provided that the said grantee shall after the 1st day of January, 1925, have the right to occupy, use, cultivate, lease, or rent such lands, provided such grantee shall, to the satisfaction of the grantors, support and maintain them (the said grantors). And it is further provided that in case the grantors shall survive the grantees, then the heirs of the grantees shall have the right to carry out all the provisions of this deed, but it is understood that the right of the grantee or his heirs to use

and occupy the said lands will in no way interfere with
or deprive the grantors of the right to occupy said lands
and premises at their pleasure.''

Subsequent to the execution of this deed, the appellant
represented to the appellee that appellee's daughter and
her husband were dissatisfied with the arrangement and
insisted that the appellant pay them the two thousand
dollars then; that he would like for appellee to change
the deed so as to give appellee's daughter seventy acres
of the land in lieu of the two thousand dollars, and there-
by relieve appellant of the obligation to pay appellee's
daughter two thousand dollars out of the proceeds of the
place, which the appellee agreed to do. The appellant
thereupon sent for a person, not a lawyer, to fix the pa-
pers so as to effect this purpose. This person drew a
straight deed in fee simple, without any conditions at-
tached thereto and without embodying the agreement
therein, which deed was signed by the appellee and his
wife and witnessed by two persons, one of whom after-
wards made affidavit as a subscribing witness, and the
deed was recorded on the 1st day of November, 1924, in
the Records of Deeds in the county.

The appellee testified that he could neither read nor
write, that he did not understand land numbers and was
incapable of judging, from a reading of the deed in land
numbers, the legal effect thereof; that he thought he was
signing the deed as originally drawn with an alteration
eliminating the two thousand dollar provision for ap-
pellee's daughter and substituting therefor seventy acres
of the land originally conveyed to the appellant; that he
did not know he was signing a new deed, and was not
informed by any one of the persons present at the time of
the signing of the papers of the changed effect of the
new deed. He testified, further, that subsequently, on
discovering this or learning that it was a new deed—that
it was, in fact, a fee-simple deed—he took the matter up
with his son (appellant), who agreed to have the deed
corrected so as to embody the agreement and under-

standing set out in the original deed, but that he had neg-
lected to do so; that, finally, appellant became dissatis-
fied and proposed to move away.; that appellant asked
the grantors (the appellee and his wife) if they would
go with him to his premises, which they did not desire to
do; that the appellant proposed to place another person
on the place as a tenant, but this person would not agree
to go on the place unless the grantors, the appellees here-
in, would move out of the house on the place, which they
were unwilling and declined to do; that the appellant
then proposed to move away and let the appellee and his
wife remain in their own home and handle the place, to
which appellee agreed, provided appellant would restore
him to the condition he was in when the first agreement
was entered into, which the appellant agreed to do; that
a question arose as to some improvements his son (the
appellant) had made on the premises, and some other
items, and the appellee surrendered to the appellant a
note for eight hundred fifty dollars in satisfaction of
his claim, and the appellant promised to reconvey the
lands to him but failed to do so, and finally refused to do
so.

Appellant's version was that they entered into the orig-
inal contract, as stated; that his sister (the daughter of
the grantor) insisted that he (the appellant) pay her the
two thousand dollars at once; that he approached his
father about making a change in the papers, and re-
quested that a deed to certain land be made to his sis-
ter in satisfaction of the two thousand dollars, so as to
eliminate her from the transaction; and his father ac-
ceded to his request; that a deed was prepared by a scriv-
ener, which was read to his father and was satisfactory
to him at that time, but that subsequently his father be-
came dissatisfied and compelled him (appellant) to leave
the place. Appellant denied that the note which was sur-
rendered to him at that time was for eight hundred fifty
dollars, but admitted that there had been certain pay-
ments made on the note. Appellant stated that he left as

145 Miss.—29.

much on the place as he fou**h**d there; that he did not in-
tend to surrender his right under the deed, but intended
that his father should remain on the place and use it for
his support during his lifetime and retain his title there-
to at his father's death.

There is no real dispute about what was said at the
time the son proposed to have the deed changed, and
there is no contention in the evidence of the appellant
that the agreement leading up to the change was to give
him a fee-simple title to the land freed from the obliga-
tion to support, which was the consideration therefor.

This court has held in several cases that a mere breach
of an agreement to support, as a consideration for a
deed, is not sufficient to justify the setting aside of the
deed for the support, and that there is no lien, unless ex-
pressly reserved, which would author**ı**ze the chancery
court in charging the lien upon the property. *Lowrey*
v. *Lowrey,* 111 Miss. 153, 71 So. 309; *Lee* v. *McMorries,*
107 Miss. 889, 66 So. 278, L. R. A. 1915B, 1069; *Dixon*
v. *Milling et al.,* 102 Miss. 449, 59 So. 804, 43 L. R. A.
(N. S.) 916. We think, however, that the chancellor's
finding can be sustained and the decree upheld upon the
evidence in the record on the theory that the minds of
the parties did not meet in the execution of the last deed,
and that there was a fraudulent concealment of the ef-
fect of the provisions of the deed, the father being unable
to read and at an age when his mind was not capable of
acting with the same intelligence as his son's mind acted.
Under the facts then existing, there was a relation of
confidence between the father and the son; and we think
the trust reposed in the son by the father called for the
fullest and freest disclosures of the purposes of the
son in procuring the execution of these papers, which
was not reciprocated by the son. And this is strengthened
by the fact that there was a verbal .agreement at the
time the son moved away, supported by the payment of
money, by which the rights of the son to the place would
be surrendered and canceled. The verbal agreement, even

though accompanied by a consideration, would be insufficient to support a decree for reconveyance, but, taking all the circumstances together, we think it is clear that the complainant was entitled to the relief prayed for, and the judgment of the lower court will be affirmed.

*Affirmed.*