### HUNT v. DAVIS, et al.

In Banc. March 27, 1950.

No. 37442 (45 So. (2d) 350)

712

Butler, Snow & O'Mara, and Snow & Covington, for appellant.

718

Broach & Ethridge, Arthur G. Busby, Jr., and **Frank Clark,** for appellees.

Butler, **Snow & O'Mara**, and **Snow & Covington**, in reply.

Alexander, J.

Bill was filed by Hunt to remove certain alleged clouds upon his title to one-half the minerals under the West Half of the Northwest Quarter of Section 2, Township 9 North, Range 9 West. These clouds consist of a mineral deed from Davis to Clark and a mineral lease from Clark and Davis to Reynolds and Wedemeyer. The answer included a cross-bill by the defendants to cancel the title of Hunt to one-fourth the minerals. The chancellor entered a decree dismissing the cross-bill and awarding re-

lief to Hunt. A rehearing was later held under amended pleadings stressing the allegation of a unilateral mistake. The chancellor set aside the former decree and entered a decree dismissing the bill and granting relief under the amended cross-bill allowing Hunt a refund to the extent of the interest Davis "intended" to convey, and damages. Hunt appeals.

The situation which developed was this: Hunt, who was not theretofore acquainted with Davis, sought out a mutual friend who in 1938 accompanied him to the home of Davis and offered to buy a one-half mineral interest in some two hundred acres of land. To this, Davis agreed, and the price paid was $100, or $1 per mineral acre. The deed was thereupon drawn up, using the description in tax receipts procured by Hunt, and it conveyed "'an undivided one-half ($\frac{1}{2}$) interest in and to all the oil, gas and other minerals of every kind and character in or under" the described two hundred acres. It was later disclosed that Davis did not own all the minerals in the eighty acre tract first above described, but only one-half thereof. Thus, the deed conveyed all the minerals he owned therein.

Davis contends that his intention was to convey only one-half of all the minerals he owned. Hunt maintains that he bought and paid for one hundred minerals acres, or an undivided one-half mineral interest in all the lands. Testimony was adduced to support these respective views. ■ ■ The chancellor found that "Mr. and Mrs. Davis did not intend to convey all their mineral interest under this particular tract," but also found that there was not sufficient evidence that Hunt knew Davis owned a one-half interest in the eighty acre tract and made no representations in that regard; that he did nothing to prevent Davis and his wife from reading and examining the deed which they executed; and that Hunt's information upon which he had the deed written was procured from tax receipts covering the land as such.

There is therefore eliminated any consideration of mutual mistake, or fraudulent representation such as was controlling in Tillery v. Lewis, Miss., 43 So. (2d) 650, and the narrow point for decision is the effect of a unilateral mistake on the part of Davis. In this connection, while the chancellor found that Davis did not intend to sell all his minerals on this tract, the mistake could well have been not that he did not intend to sell one hundred mineral acres but that he overlooked the extent of his residual interest. Support for this incidental view is found in the final decree by which Davis was required to refund to Hunt $20 representing a reduction of his interest therein from one-half or one-fourth, on the same basis of $1 per mineral acre.

Appellee has documented his claim to a partial reformation or rescission upon the basis of unilateral mistake with great industry and resourcefulness. Many authorities from other jurisdictions support his equitable claim. We do not pass these lightly by but examine the extent to which this Court has applied the doctrine. Recognition of the doctrine was given in Terre Haute Cooperage Inc. v. Branscome, 203 Miss. 493, 35 So. (2d) 537, 540, where we cited with approval Pomeroy's Equity Jurisprudence, 4th Ed. Vol. 2, p. 175, as follows: "it has been said that ██ ██ equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; . . .". It was further recognized that there may be cases where relief may be proper if "enforcement of the contract would be unconscionable", yet only where the party making the mistake "was in the exercise of ordinary diligence." A mere improvident contract supplies no basis. Butterfield Lumber Co. v. Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A., N. S., 1123, 131 Am. St. Rep. 540. Davis was not illiterate, and if a disparity in value be alone examined, it is appropriate to consider that the price paid in 1938 was then a prevail-

ing figure, and it is without point to adjudge any possible inequity in the light of its appreciated value ten years later, after a producing well had been drilled thereon.

We have discussed the ██ ██ doctrine of unilateral mistake in numerous other cases. In Wall v. Wall, 177 Miss. 743, 171 So. 675, 677, we held that such mistake "to constitute equitable relief, must not be merely the result of inattention, personal negligence, or misconduct on the part of the party applying for relief."

In Coombs v. Wilson, 142 Miss. 502, 107 So. 874, there was involved the efficacy of a deed of trust, which was executed to secure a debt of $294.10, to cover also an outstanding debt of $603.49. We stated that it was "beyond question that Bowen did not intend" to secure the latter debt. The controlling considerations were that there was no fraud or false representation by the beneficiary, and that Bowen executed it without reading it. So also in Koenig v. Calcote, 199 Miss. 435, 25 So. (2d) 763; McCubbins v. Morgan, 199 Miss. 153, 23 So. (2d) 926; Alliance Trust Co., Ltd., v. Armstrong, 185 Miss. 148, 186 So. 633. Cases cited by appellee from this Court do not contain the elements here present. Reference has also been made to Tillery v. Jones, supra, cited by both parties. The point of departure in that case was the fact of a false representation made by Tillery to Jones who was unacquainted with and uninformed as to the extent of his holdings which had been owned by his grandfather. Even in this case, one may detect that in view of the division among the members of the Court the decision may have been grudgingly made under the pressure of undeniable equities. See also Brooks v. Brooks, 145 Miss. 845, 111 So. 376.

██ ██ A variant of the doctrine of unilateral mistake is seen in the frequent assertion that there must be a meeting of the minds. We dealt with this subject recently in Ligon v. Philip Schalansky & Brothers, Miss., 43 So. (2d) 881. Here, there was a definite agreement with appellee's agent, but the contract was not carried

out as agreed. There must be an unsuccessful attempt by the parties to get their minds into accord. If one does a thing deliberately and intentionally, he may not be heard to say that upon further reflection he may have acted otherwise, or that he entertained a different purpose which he refused or neglected to disclose. ██ Minds must be held by the law to have met in all open covenants openly arrived at. The law which parties invoke to aid them must also hold them to have intended to do that which they did under no compulsion or misleading. Goff v. Avent, 122 Miss. 86, 84 So. 134; Dunbar v. Aldrich, 79 Miss. 698, 31 So. 341. It is thus that solemn wills which may, and sometimes do, express clearly a purpose at variance with the testator's actual intention, are taken at their words.

Point is made by plea and argument that the action is barred by our ten-year statute of limitations, Code 1942, Section 710. Discussion of this interesting but perplexing question is pretermitted in view of what we have said herein.

The decree is reversed and the cross-bill dismissed, with decree here for appellant.

Reversed and decree here for appellant.