**MISSISSIPPI STATE PORT AUTHORITY, Plaintiff,**

v.

**INLAND TUGS COMPANY, Defendant.**

**Civ. A. No. S85–1282(NG).**

United States District Court,
S.D. Mississippi, S.D.

July 15, 1986.

Terese T. Wyly, Ben H. Stone, Gulfport, Miss., for plaintiff.

James O. Dukes, Gulfport, Miss., Donald L. King, New Orleans, La., for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. The Court has reviewed the exhibits and affidavits submitted by the respective parties in support of and in opposition to the instant Motion and, for the reasons stated below, concludes that the Motion should be denied.

## I. FINDINGS OF FACT

On March 11, 1985, the "M/V Lenward Stephens" with tow, owned by the Defendant, Inland Tugs (a subsidiary of American Commercial Barge Line) entered the Gulfport, Mississippi, Harbor and, while attempting to dock at the Mississippi State Port Authority ("Port") facility, struck and damaged the west pier wharf. A damage survey was conducted the following day and a repair estimate was submitted to the Port by its engineering consulting firm, Simpkins & Costelli, Inc., in the amount of $29,086.00. Upon receipt of the estimate, Inland Tugs, by letter dated May 8, 1985, informed the Port that "[i]t ... appears Mississippi State Port of Authority is not attempting to fulfill their obligation to minimize their alleged losses as a result of this incident" and suggested that the Port obtain competitive bids for the repair work. Defendant further indicated that "[o]nce the damage has been repaired and we have received your claim which demonstrates complete mitigation of losses we will be in a position to further review this matter". Thereafter the Port advertised for bids for the repair work and received two bids. The low bid was submitted by George Hopkins, Inc., in the amount of $37,945.00 (plus any necessary charges for splicing of piling). Upon submission to Inland Tugs of both repair bids and the original repair estimate, Inland Tugs advised the Port by letter dated August 8, 1985, that it felt both the repair bids and the original repair estimate were excessive. Defendant did, however, offer to pay the Port $21,000.00 "in full and final settlement" for the repair of the dock. The Port rejected the offer by letter dated August 15, 1985.

After being advised that the Port had retained counsel to handle the subject damage claim, Inland Tugs, by letter dated August 28, 1985, offered to pay the Port a compromise sum of $29,472.50, as full and final settlement for the repair work. The Port refused the offer. Subsequently, by letter dated September 12, 1985, Inland Tugs requested that the Port proceed to contract for the repair work and that once

the repairs were complete and upon receipt of the repair invoice, Defendant would further review the claim for payment. On September 27, 1985, the Port contracted with George Hopkins, Inc., for its bid amount.[1] On October 23, 1985, the Port filed this suit against the Defendant seeking recovery for costs incurred in connection with the repair of the damaged dock.

Upon review and audit of the Port's account receivable records at Gulfport as of June 30, 1985, William McGhee, an auditor/accountant for the Port, noted an outstanding balance for American Commercial Barge Line in the amount of $29,086.00. This debt amount represented the repair estimate submitted by Simpkins & Costelli, Inc. Thereafter, on November 1, 1985, McGhee, without the consent or knowledge of either the Port's Executive Director or Board of Commissioners, sent a copy of an invoice listing overdue accounts, one of which was in the amount of $29,086.00, and requested that payment be made.[2] On November 11, 1985, Inland Tugs sent McGhee a check in the amount of $29,086.00 along with a document entitled "Release and Indemnity Agreement" which recited that the amount tendered was received as full and final settlement of the Port's claim against it for the damage done to the dock by the "M/V Lenward Stephens". McGhee brought this correspondence to the attention of the Port's Executive Director and its legal counsel. By letter dated November 19, 1985, Inland Tugs was informed by the Port's counsel that its tender of settlement in the amount of $29,086.00 had not been accepted and that the Port intended to proceed in its lawsuit against the Defendant for the full repair expenses. The check was not negotiated by the Port but was instead returned to the Defendant along with the unexecuted "Release and Indemnity Agreement".

## II. CONCLUSIONS OF LAW

The criteria to be employed by this Court in considering a motion for summary judgment are well established. A grant of summary judgment is appropriate only when it appears from the pleadings, depositions, admissions, answers to interrogatories and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure; *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985); *Rayborn v. Mississippi State Board of Dental Examiners,* 776 F.2d 530 (5th Cir.1985). The purpose of the motion for summary judgment is to test the intrinsic merits of the case and to determine prior to trial whether any factual controversy is presented. *Gosset v. DU–RA–KEL Corporation,* 569 F.2d 869 (5th Cir. 1978). Summary judgment is permitted only when "the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts." *Prinzi v. Keydril Company,* 738 F.2d 707 (5th Cir.1984).

Inland Tugs advances two arguments which it contends compel the granting of the instant Motion. Defendant first argues that the exchange between it and McGhee in November of 1985 constituted a settlement agreement[3] Plaintiff may not now attempt to avoid, notwithstanding the unilateral mistake on the part of McGhee.

The parties to this lawsuit do not dispute the fact that the construction and enforce-

---

1. By January 6, 1986, the work was complete; the total cost of repairs paid by the Port was $38,545.00.

2. McGhee's affidavit states, *inter alia,* that he was unaware of the Port's prior negotiations and pending litigation against the Defendant and that "[t]he November 1, 1985, invoice and request for payment sent to American Commercial Line was done through clerical inadvertence and lack of knowledge that Inland Tugs and American Commercial Line were one and the same ...". McGhee's affidavit further indicates that the invoice he sent on November 1, 1985, was not intended to be an offer to settle the disputed claim between Plaintiff and Defendant here.

3. Defendant submits that the Port's November 1, 1985, demand for payment in the amount of $29,086.00 comprised the offer to settle which Defendant accepted with its November 11, 1985 transmittal of a check for that amount and accompanying release documents.

ment of settlement agreements is governed by principles of state law applicable to contracts generally. *White Farm Equipment Co. v. Kupcho, Et Al.*, 792 F.2d 526 (5th Cir.1986). Further, the inherent power of this Court to enforce agreements entered into in settlement of litigation is also not in question. *Lee v. Hunt*, 631 F.2d 1171 (5th Cir.1980). The Port does, however, challenge Defendant's contention that the circumstances surrounding the alleged settlement agreement do not warrant excusing the Port from its terms.

The Fifth Circuit in *Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398 (5th Cir. 1982) discussed the requirements under Mississippi law which must be met before a party may avoid a contract on the grounds of unilateral mistake if the mistake was a product of that party's negligence:

Mississippi law does not allow a party to avoid a contract on the ground of unilateral mistake if the mistake was merely the result of that party's inattention or negligence. *Hunt v. Davis*, 208 Miss. 710, 724, 45 So.2d 350, 352 (1950) (quoting *Wall v. Wall*, 177 Miss. 743, 748, 171 So. 675, 677 (1937); *Sacred Heart S. Missions, Inc., v. Terminix Int'l, Inc.*, 479 F.Supp. 348, 350–51 (N.D. Miss.1979). This rule, however, is not inexorable. *See Mississippi State Bldg. Comm'n v. Becknell Const., Inc.*, 329 So.2d 57, 60–61 (Miss.1976) (quoting *State Highway Comm'n v. State Constr. Co.*, 203 Or. 414, 435, 436, 280 P.2d 370, 380, 381 (1955)); *Sacred Heart S. Missions, Inc. v. Terminix Int'l, Inc.*, 479 F.Supp. at 351. If (1) the alleged mistake, although unilateral, is of so fundamental a character that the minds of the parties never in fact met, or an unconscionable advantage has been gained; *and* (2) there was no gross negligence or willful neglect by the party responsible for the mistake, either in committing the mistake or in not seeking relief from it, then the court may, in its discretion, excuse the responsible party. *Mississippi*

*State Bldg. Comm'n v. Becknell Constr., Inc.*, 329 So.2d at 59–60.[3]

[3] Two other requirements for the application of this doctrine—that there be no accrued, intervening rights, and that the parties' positions be such that the status quo may be restored, *Mississippi State Bldg. Comm'n v. Becknell Constr. Inc.*, 329 So.2d at 61—need not be discussed in deciding this case.

■ With the above authoritative guidelines in mind, and under the facts as above stated, the Court is satisfied that all of the exceptions to the general rule have been met.[4] McGhee's affidavit clearly demonstrates that there was no "meeting of the minds" between the parties concerning the alleged settlement agreement. That the Port did not intend McGhee's November 1, 1985, demand for payment in the amount of $29,086.00 to constitute its offer of settlement is further evidenced by Plaintiff's counsel's letter of November 19, 1985, rejecting the tendered check and returning same. The Court is of the opinion that McGhee's clerical mistake does not amount to gross negligence or willful neglect on the part of the Port, especially when viewed in light of Plaintiff's overall course of conduct in endeavoring to obtain full compensation for costs incurred in repairing the dock. If this Court were to enforce the alleged settlement agreement, Defendant would thereby gain an unconscionable advantage as its obligation to the Port for the damage caused to the dock—assuming Inland Tugs is indeed liable—would have been unfairly abridged. Finally, the Court finds that excusing the Port for McGhee's inadvertent error will neither preclude restoration of the *status quo* nor prejudice the rights and positions of the parties.

The second legal theory relied on by Defendant in support of its motion is that all of the elements necessary for the doctrine of accord and satisfaction to be established have been satisfied by the actions of the parties.

4. In view of the Courts' decision on this point the Court need not address whether McGhee even had the requisite authority to enter into any contract or settlement agreement with In-

land Tugs. For purposes of its instant ruling, the Court assumes *arguendo* that he did. *cf.* Mississippi Code Ann. Section 59–5–37 (Supp. 1985).

The four basic elements of an accord and satisfaction, as set out by the Mississippi Supreme Court, include:

(1) something of value offered in full satisfaction of demand; (2) accompanied by acts and declarations as amount to a condition that if the thing offered is accepted, it is accepted in satisfaction; (3) the party offered the thing of value is bound to understand that if he takes it, he takes subject to such conditions; and (4) the party actually does accept the item.

*Lovorn v. Iron Wood Products Corp.*, 362 So.2d 196, 197 (Miss.1978). The Defendant in this case contends that the events of November, 1985[5] satisfy the above elements for accord and satisfaction and thus operate to bar further prosecution of Plaintiff's claim. The Court, however, must reject Defendant's contention. Even if this Court were to accept Defendant's inverted identification of offeror and offeree,[6] "[o]ne of the essential elements of an accord and satisfaction is an agreement, or a meeting of the minds of the parties. This agreement must have all the essentials of a contract and may be express, or implied from the circumstances". *Cook v. Bowie*, 448 So.2d 286, 287 (Miss.1984), quoting from *Roberts v. Finger*, 227 Miss. 671, 677–78, 86 So.2d 463, 465 (1956). *Also see Rivervalley v. Deposit Guaranty National Bank*, 331 F.Supp. 698 (N.D.Miss.1971); *Woods-Tucker Leasing Corp. v. Kellum*, 641 F.2d 210 (5th Cir.1981). The Court's previous determination that there was no meeting of the minds between the parties alone warrants a finding that the doctrine of accord and satisfaction has no application to the facts of this case.

For these reasons the Court is of the opinion that Defendant's Motion for Summary Judgment should be denied. A separate Order will be entered by the Court.

---

**5.** See footnote 3 of this Memorandum Opinion.

**6.** Defendant's transmittal of the check in the amount of $29,086.00 on November 11, 1985 should be deemed its "offer" to settle the disputed claim which was rejected by Plaintiff's correspondence of November 19, 1985.