WALL et al. v. WALL et ux.

(Division B.   Jan. 4, 1937.)

[171 So. 675.   No. 32479.]

744

**McIntosh & McIntosh,** of Collins, for appellants.

**Currie & Currie,** of Hattiesburg, for appellees.

Argued orally by **H. M. McIntosh,** for appellant, and by **E. J. Currie,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Appellee F. N. Wall, formerly the owner of certain property in Covington county, and his wife, Mrs. Martha Wall, executed a trust deed thereon to the Federal Land Bank to secure a loan from said bank. The pay-

ments were divided into annual installments, and appellees appear to have made some payments on the debt, but after the 1928 payment, they seem to have been unable to meet the payments. Roy Wall, son of F. N. Wall, and stepson of Mrs. Martha Wall, advanced the money to pay the installments due in 1929, 1930, and 1931. The said F. N. Wall was unable to meet the 1932 payment, and called upon Roy Wall for help, and, on June 7, 1932, he appeared at the home of his father and stepmother with his wife, Mrs. Lula B. Wall. It was then desired that the son, Roy Wall, be secured, in some manner, for advances formerly made and to be made. Some discussion took place with a banker at Hattiesburg, who advised against the giving of a second mortgage, and it was arranged that F. N. Wall and his wife execute a deed to the lands in question to Roy Wall, which was done; the deed was read to the parties, and Lula B. Wall objected and refused to accept same. Thereupon, some one in the chancery clerk's office, where the deed was prepared, wrote another deed reading as follows:

"In consideration of the sum of Three Hundred Seventy ($370.00) Dollars cash in hand, the receipt of which is hereby acknowledged, and the assumption and payment of a balance due on a certain note and deed of trust to the Federal Land Bank of New Orleans, La., in the sum of Nine Hundred Nineteen ($919.00) Dollars, we, F. N. Wall and wife, Martha P. Wall, hereby sell, convey and warrant to Roy Wall and his wife, Lula Belle Wall, the land described as'' (setting forth the description). This deed was duly signed and acknowledged on June 9, 1932, and recorded in the office of the clerk of the chancery court of Covington county.

Thereafter, Lula B. Wall paid the amount due to the Federal Land Bank, and, in the meantime, F. N. Wall and his wife continued to occupy said land which had, for a long period, constituted their homestead.

Considerable correspondence took place between F. N. Wall and Lula B. Wall, and in 1933, Roy Wall having conveyed his interest in said land to his wife for the consideration of love and affection and the assumption of the debt due to the Federal Land Bank, Lula B. Wall insisted that a portion of the place be rented, and that the other sons of F. N. Wall contribute to his support. In 1934, Lula B. Wall demanded that the appellees, F. N. Wall and wife, vacate and give her possession. An arrangement was made, however, for appellees to pay one hundred dollars rent to Lula B. Wall. Later, being dissatisfied with the arrangement, Lula B. Wall desired to sell the place, and instituted a proceeding to dispossess F. N. Wall and wife.

The appellees sued out a writ of injunction to prevent their dispossession, setting up that it was understood and agreed that they were to live upon the land during their lifetime, and that Roy Wall would pay the taxes, and furnish any necessities, should they be unable to support themselves upon said property.

Lula B. Wall answered, denying any such agreement, and her husband, Roy Wall, disclaimed any interest in the property, having deeded his interest therein to Lula B. Wall, his wife. She made her answer a cross-bill, and prayed for an accounting for the rents and profits of the place, and a lien upon the property for the debt. Roy Wall was not introduced as a witness.

The court found for F. N. and Martha Wall; reformed the deed to embrace the contention of the appellees, and enjoined Lula B. Wall from interfering with their possession.

The evidence does not disclose any contention, at the time the warranty deed was signed by F. N. and Martha Wall, that it was not read and understood by the parties signing same, except that Martha Wall said she did not know what it contained. F. N. Wall testified that he knew, at the time he signed it, what it contained, but that his wife did not know what was in the deed.

The correspondence between the parties shows clearly that Lula B. Wall was asserting title, under the deed, and that, after knowledge of such assertion, F. N. Wall rented the land from her, and solicited her to rent some of the land to parties, as tenants, to be selected by him.

The evidence is wholly insufficient to sustain the decree of the chancellor. There is no proof, whatever, to sustain any view that both Lula B. Wall and her husband, Roy Wall, on one hand, and F. N. Wall and his wife, Martha Wall, on the other hand, intended to make the deed in accordance with the prayer of the bill of complaint filed by F. N. Wall and his wife.

In order for a deed to be reformed to constitute the deed that was intended to be executed, the proof must show that the mistake was a mutual one, and the proof should show clearly what the real agreement was, and what was understood by each party.

There is a different relief which may be had where one of the parties mistook, or was acting under a mistake, or in ignorance of the matters bearing upon the execution of a contract which, if known, would have prevented its execution. In such case, the contract may be rescinded and the parties placed in statu quo ante, but, in our opinion, the evidence in the case at bar does not warrant the relief sought, or any relief.

In the case of Cresswell v. Cresswell, 164 Miss. 871, 140 So. 521, 141 So. 41, this court announced the following rules upon this subject: (1) The party alleging fraud or undue influence in the procuring of a deed has the burden of proving it; (2) persons of sound mind, except those under twenty-one years of age, and those who have been overreached, must abide the consequences of their solemn, deliberate acts in executing deeds; (3) one claiming deed was invalid because of confidential or fiduciary relations must establish such relations; (4) presumption of fraud or undue influence does not arise because of blood relationship accompanied by affection

between parties to a deed; and (5) a fiduciary relation is one in which, if wrong arises, the same remedy exists against the wrongdoer on behalf of the principal, as would exist against a trustee on behalf of the cestui que trust.

The contention that there was a fiduciary relation between the father and the son is not established by the evidence. The son appears to have been solicitous for the welfare of his parents during his period of "single blessedness," but after his marriage he seems to have been under the influence of his wife. There is not established in the case any act by the son, at the time the deed was executed, inconsistent with the terms thereof, and there was nothing from which undue influence, duress, or fraud could be inferred.

The discussion of equitable relief, under mistake, in 10 R. C. L. pp. 294 to 304, is clear, and from this discussion it clearly appears that mistake, to constitute equitable relief, must not be merely the result of inattention, personal negligence, or misconduct on the part of the party applying for relief.

Griffith's Chancery Practice, sec. 589, discusses the proof which must be established to prove fraud or mistake, and the proof in the case at bar does not meet these requirements. Consequently, the injunction was wrongfully sued out, and the chancellor was in error in his decree undertaking to reform the deed. Therefore, the judgment will be reversed, the injunction dissolved, and the bill dismissed.

Reversed and bill dismissed.