Ross *v.* Biggs.

In Banc. May 9, 1949.

(40 So. (2d) 293)

**Henley, Jones & Woodliff,** for appellant.

548

John Armstrong, and **Lotterhos & Dunn,** for appellees.

**Hall, J.**

Appellant brought suit for cancellation and rescission of a contract of sale executed by J. T. Biggs, Sr. to J. T. Biggs, Jr., his son, on February 21, 1938, and from a decree dismissing the bill and denying the relief sought this appeal is prosecuted.

A copy of the contract was exhibited with the bill and was also introduced in evidence, and it shows that on the date aforesaid J. T. Biggs, Sr. sold and conveyed to his said son 75 shares of capital stock of J. T. Biggs & Son, Inc., a Mississippi corporation domiciled at Crystal Springs, Miss., and that the son agreed to pay to his father a minimum of $10,000 therefor, of which $1,000 was payable in cash immediately and the remainder was payable at the rate of $150 per month for the life of the father. The contract provided that if the father should die before receiving the full sum of $10,000, then the remainder should be payable to the father's legal representatives, but if the father lived long enough to draw the full $10,000 the said payments of $150 per month should thereafter continue throughout the remainder of his life regardless of how long he might live. It also provided that the son should maintain insurance upon his own life in favor of the father for the face amount of $5,000 to secure the father for his monthly payments in the event the son should predecease the father but that a collection by the father upon this policy should not relieve the son's estate of the obligation to continue the monthly payments over and above those which might be made out of the insurance.

The bill charged that J. T. Biggs, Sr. had established a hardware business at Crystal Springs, Mississippi, about 1914 and at about the close of the First World War

had taken his said son in as a partner after which each owned an undivided one-half interest therein; that this business prospered and a branch was established at Utica, Miss., under the name of Biggs Hardware Company; that later on the Crystal Springs business was incorporated under the name of J. T. Biggs & Son, Inc., and the Utica business was incorporated under the name of Biggs Hardware Company, but that the stock in the latter company was owned by the former company.

The bill further charged that at the time of the transfer of the capital stock J. T. Biggs, Sr. was 86 years of age, had not kept up with the details of the business, did not know the value thereof, had relinquished the control thereof to his son and could not draw a dollar therefrom without the consent of the son; that the son is a man of very domineering disposition and at the time of said transfer had assumed not only the full control and domination of said business but also the management and control of the personal affairs of the father, and that as a result thereof a fiduciary relationship existed between the parties whereby the son was managing and controlling, as trustee, the interest of his father in said corporations.

The bill further charged that the father had become very much in love with a lady, who is now his widow, and expressed a desire to marry this lady, but that his business affairs were under such control of the son that the father could not obtain any funds with which to consummate his desired marriage and was placed in a position where he was absolutely in the control and under the domination of the son; that under these circumstances the father was not in a position to deal at arm's length with his son because of his strong desire to obtain funds to carry out his plans to marry again; that the father proposed to sell to the son his interest in said businesses and, having confidence and trust in his son, left to the son the important detail of fixing the value of the interest to be sold; that this interest of the father was worth not

less than $40,000 and that the son breached the trust and confidence which the father reposed in him and took an unfair and unconscionable advantage of the father and drove a hard bargain with him by' fixing the value at $10,000 to be paid as above delineated, and that the commuted value was much less than this amount because of the provision for paying the $9,000 balance over a long period of time without interest.

The bill charged that the son misrepresented to the father the value of his interest, that this misrepresentation was deliberate and intentional, that the father relied thereon in making the sale, and that the son perpetrated such a legal fraud upon the father as to invalidate the sale. We have outlined the heart of the bill of complaint, though there are many other allegations therein which we deem unnecessary to set out.

The answer admitted the history of the business and admitted the execution of the contract of sale, but denied in detail all of the allegations pertaining to the alleged invalidity of the contract. A voluminous record was built up upon the issues in the case and at the conclusion of the trial the Chancellor found for the defendants and dismised the bill.

Appellants' have divided their brief into thirteen points. Twelve of these points attack the decision of the Chancellor upon the facts and the law and resolve themselves into the single argument that we should reverse the decree of the lower court upon the doctrines announced in the cases of Ham v. Ham, 146 Miss. 161, 110 So. 583; Bourn v. Bourn, 163 Miss. 71, 140 So. 518; and Watkins v. Martin, 167 Miss. 343, 147 So. 652. The other division deals with the rulings of the lower court upon the exclusion of evidence.

After a careful consideration of the entire record we are of the unanimous opinion that the evidence abundantly supports the decree of the trial court, and that, in fact, the appellant wholly failed to prove the case stated in the bill of complaint. The record discloses that J. T.

Biggs, Sr., while not possessed of much education, was a man of unusually sound judgment and good business ability; that notwithstanding his age of 86 years at the time of the consummation of the sale he was mentally keen and alert and thoroughly familiar with the affairs of the business and carefully went over the audit thereof which had been completed about three weeks previously. It was shown that J. T. Biggs, Sr. desired to retire from the further responsibilities of the business and that he himself worked out the plan of the sale and fixed the price thereon; that this idea was two-fold: first, that he realized that his son had materially assisted in building up the business and was then putting into it long hours of work, and he wanted his son to have the benefit thereof without interference from and to the exclusion of the other heirs, and second, he desired life security from his interest in the business and did not desire to obtain in the deal "the last dollar" for the interest which he was selling. He conferred privately with his auditor about it, and adopted the suggestion from this auditor that the son be required to maintain life insurance as security for the deferred payments.

The contract was prepared by a disinterested attorney at law who had never represented any of the parties; it was carefully read by the father and he was satisfied with its provisions; he duly executed it freely and voluntarily. After the contract was executed he told at least two of his closest friends about it and expressed himself as being happy over relinquishing further responsibilities in the business and in having a life income therefrom. He lived for a period of ninety-nine months after execution of the contract and drew thereunder the total sum of $15,850, and in addition thereto he obtained through these years merchandise from the store which ran the total up to almost $19,000. He was never billed for this merchandise and the account was cancelled after his death. Throughout the more than eight years that he lived after execution of the contract he never made any

complaint against any of the provisions thereof, but acquiesced therein, drew the benefits therefrom, and appeared to be perfectly satisfied with his bargain. The son had married and moved from under the paternal roof fifteen years before the execution of the contract.

The evidence failed to show that the son was a man of domineering disposition, but, on the contrary, disclosed that he never crossed his father during his entire lifetime, and that if there should be any division of opinion between father and son in the conduct of the business, the wishes of the father controlled. The father was president of the corporations throughout the years and had the unlimited power to withdraw funds therefrom whenever he desired. It was shown that the son exercised no control whatever over the father's private affairs, but that he transacted his own business according to his own ideas both before and after execution of the contract.

It was shown that the father remarried in November 1938, but the charge that he was coerced into making the sale because of his desire to remarry was not only unsupported by one word of proof but was conclusively shown to be untrue. The widow refused to sanction the suit which was brought and testified that the first time Mr. J. T. Biggs, Sr. ever called on her was in April 1938, some two months after the sale. She was corroborated in this. She also testified that he told her he had retired from business and she married him knowing that he owned nothing except his home, an automobile, and his life income.

The book value of the father's interest in the business at the time of the sale was shown to be somewhere between $23,000 and $27,000, but the proof discloses that his interest could probably not have been sold for that much because it was merely stock in a family or closed corporation which outsiders would be reluctant to purchase. The foregoing is a sufficient detail of the salient facts for an understanding of the principles involved,

It must be noted at the outset that we are not here dealing with a sale of assets in a partnership firm by one partner to another. The several stockholders in a corporation do not bear toward each other that same relation of trust and confidence which prevails in partnerships. A partnership is based almost wholly upon the trust and confidence reposed by each partner in the other and the fact of existence of a partnership is one of the evidences of a confidential relationship between the partners. The confidential relationship between partners is such that one partner cannot be convicted for embezzlement when he wrongfully appropriates funds or property of the partnership to his own use, but this rule has no application as between stockholders in a corporation. The corporation is in itself a legal entity, holding in its own name the title to everything owned by it.

Taking up the cases upon which appellant relies, we find that in Ham v. Ham, supra, C. M. Ham and Eugene Ham were brothers and partners in business; on April 23, 1924, C. M. Ham was suffering with an incurable disease which was certain to produce death within a relatively short time, and from which he did, in fact, die on January 17, 1925; on the first mentioned date C. M. Ham executed a conveyance to Eugene Ham whereby he sold to Eugene practically everything he owned, valued at about $80,000, in consideration of the obligation of Eugene to pay him $250 a month for life and to pay his physician and hospital bills, and his funeral expenses at death. The deed was not intended as a gift but was a straight bargain and sale, and no minimum amount was fixed as the consideration therein stated. Eugene Ham actually paid out about $3,500 as consideration for the conveyance. Because of the illness and physical disability of C. M. Ham the business was practically under the sole supervision and control of Eugene; the relation of trust and confidence between them was much more close and intimate than the law presumes from the mere fact of their being partners in business. The evidence

failed to show that C. M. Ham had full knowledge of the value of the property conveyed or that the deed was executed of his own independent consent and action. Under these circumstances this court applied the principle of presumptive invalidity of a conveyance when a fiduciary relationship exists as a fact and "in which there is confidence reposed on one side, and the resulting superiority and influence on the other." [146 Miss. 161, 110 So. 584]. This brief résumé of the Ham case shows that it has no application to the facts in the instant case.

In the case of Watkins v. Martin, supra, upon which appellant relies, the parties were brothers and partners. At a time when he was desperately ill with a disease from which he died eight days later, S. W. Martin conveyed to his brother T. E. Martin, for no monetary consideration and purely as a gift, personal property worth in excess of $25,000 and real estate with a valuation of considerable magnitude, the approximate cash value of which was not shown. There was a very close mutual confidence and affection between them which established the existence of a fiduciary relation, and the court held that the grantee in the deed failed to meet the burden which was upon him to overcome the presumption of invalidity of the deed. In the case at bar we are not dealing with a death-bed conveyance and if from the relation of father and son as here shown there was any presumption of invalidity, the appellees have abundantly overcome the same by the evidence offered at the trial.

In the case of Bourn v. Bourn, supra, cited by appellant, an aged mother conveyed her home to a son for a nominal consideration of $1 which was never paid; there was a close fiduciary relationship between them; and she did not act upon independent advice, and, in fact, thought that she was merely executing a will. When she discovered that she had signed a deed she did not acquiesce therein but brought a suit to set it aside, and the court held that the deed was presumptively invalid and that the evidence for the son did not overcome this presumption.

The foregoing as well as the other authorities relied upon by appellant simply hold that under certain circumstances creating such status of trust and confidence between the parties as to constitute a fiduciary relationship where one of them holds superiority and influence over the other, then a conveyance from the inferior to the superior is presumptively invalid and casts upon the grantee therein the burden of overcoming the presumption of invalidity. In the case at bar there was only meager evidence to establish a conventional fiduciary relationship between the parties, and even if we assume that such relationship was established, the fact still remains that the presumption of invalidity arising therefrom was fully and completely overcome according to the finding of the chancellor, which was abundantly supported by the evidence and by the decisions of this Court.

In the case of Wall v. Wall, 177 Miss. 743, 171 So. 675, 677, this court reviewed Creswell v. Cresswell, 164 Miss. 871, 140 So. 521, 141 So. 41, and laid down these rules: "(1) The party alleging fraud or undue influence in the procuring of a deed has the burden of proving it; (2) persons of sound mind, except those under twenty-one years of age, and those who have been overreached, must abide the consequences of their solemn, deliberate acts in executing deeds; (3) one claiming deed was invalid because of confidential or fiduciary relations must establish such relations; (4) presumption of fraud or undue influence does not arise because of blood relationship accompanied by affection between parties to a deed; and (5) a fiduciary relation is one in which, if wrong arises, the same remedy exists against the wrongdoer on behalf of the principal, as would exist against a trustee on behalf of the cestui que trust."

The fourth rule above announced is particularly applicable to the instant case. These rules have been followed in many cases by this Court, some of the more recent of which are Batson v. Draughon, Miss. 11 So. (2d) 203 (not reported in the State Reports); McDonald

v. Roberson, Miss. 38 So. (2d) 189; and Dantone v. Dantone, Miss. 38 So. (2d) 908, the last two of which are not yet but will be reported in the State Reports. ██ █ Bearing in mind the well established doctrine as announced in Burnett v. Smith, 93 Miss. 566, 47 So. 117, that a man of sound mind may execute a will or deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even whim or caprice, ██ █ we find no error in the decree upholding the conveyance here in question.

It is contended by appellant that the trial court erred in some of the rulings on the admissibility of evidence. Complaint is made that the court on several occasions urged counsel for both sides to confine their evidence to material matters so as to conserve the time of the trial court and avoid the compiling of an unwieldy record. ██ █ While it is true, as contended by appellant, that trial courts should permit parties a wide latitude in the development of their case, yet no case is cited where a trial court has been reversed for merely advocating brevity. ██ █ Such few items of evidence as were specifically excluded were largely upon matters which could not have changed the result of the Chancellor's decision, and his action was therefore not prejudicial.

██ █ Specific complaint is made, however, at the action of the trial court in sustaining an objection of appellees to the proffered testimony of three of the heirs. Appellant made no statement in the record as to what he proposed to show by these witnesses and elicited no testimony from them. Under this state of the case the trial court cannot be put in error. Mississippi Central Railroad Co. v. Robinson, 106 Miss. 896, 64 So. 838; Lizana v. Edward Motor Sales Co., 163 Miss. 266, 141 So. 295.

It follows from the foregoing views that the decree of the lower court should be affirmed.

Affirmed.