LAWRENCE, et al. *v.* LAWRENCE, et al.

Apr. 13, 1953

No. 38719 27 Adv. S. 31 63 So. 2d 825

*Breed O. Mounger* and *Patterson & Patterson,* for appellants.

252

*Shirley Magee* and *Cohn, Hobbs & Hobbs,* for appellees.

HALL, J.

Appellants brought suit to set aside and cancel a deed executed by H. M. Lawrence to J. W. Lawrence on January 20, 1950. The gist of the bill is that appellants and appellees are children and sole heirs at law of the said H. M. Lawrence who died intestate on April 12, 1950, that at the time of the execution of said deed H. M. Lawrence was mentally incompetent, and further that a confidential and fiduciary relationship existed between the father and son which renders the deed presumptively invalid. The chancellor found against appellants and dismissed the bill, from which action they appeal.

The evidence was overwhelmingly in favor of appellees on the issue of the mental capacity of H. M. Lawrence and the appellants do not here contend otherwise, but they do argue that the evidence is overwhelmingly in their favor on the issue of the existence of a confidential and fiduciary relationship between the father and son. H. M. Lawrence was between 76 and 77 years of

age at the time of the execution of the deed. His wife died a few years prior thereto. His health was not good but he continued to reside on his old home place until the early part of 1949 when he moved to the home of his son, J. W. Lawrence. There he made his home and there he remained until his death except for brief visits of a week or two to his other children. He rented out his home place, made the arrangements and the rent agreement himself, and collected the rents thereon for the years of 1948 and 1949. In January, 1950, he made an agreement to rent the place for that year to Will Roy Rutland. This was in the absence of and without consultation with his son. Later and on January 30, 1950, H. M. Lawrence signed a written lease to Rutland and much is made of the fact that this was ten days after he had conveyed the land to his son, but it is shown without dispute that this lease was pursuant to a prior oral agreement and was because of the fact that it was required by the Veterans Administration in connection with benefits Rutland was to receive under the farm training program available to veterans. It is also shown that although no life estate was reserved in the deed of January 20th, the son told the father that he could have the land and the income therefrom for the remainder of his life.

Some two or three weeks before execution of the deed H. M. Lawrence consulted an attorney at law and requested the drawing of a will whereby the land would go to his son at his death. The attorney advised against execution of a will and told Mr. Lawrence that he thought it would be better to make a deed to the son. Mr. Lawrence advised the attorney that he would think it over and let him know later. He did return to the attorney's office and had the deed prepared and executed it there. There was ample evidence to support a finding that H. M. Lawrence attended to his own business affairs and did not seek or obtain the advice of his son with reference thereto. The evidence shows that H. M. Lawrence

opened a joint checking account in a bank at McComb in the name of himself and J. W. Lawrence but that this was of his own choosing and was done so that "in case something should happen" it could be checked out and used if needed. The evidence justifies a finding that in this case the father was the dominant party and the son the subservient one, and we cannot say that the chancellor erred in declining to hold that a confidential and fiduciary relationship existed between them.

In Ross v. Biggs, 206 Miss. 542, 557, 40 So. 2d 293, we had this same question before us and approved the following rules which had been previously enunciated in Creswell v. Creswell, 164 Miss. 871, 141 So. 41, and in Wall v. Wall, 177 Miss. 743, 171 So. 675, viz: That one claiming a deed to be invalid because of confidential or fiduciary relations must establish such relations and that a presumption of fraud or undue influence does not arise because of blood relationship accompanied by affection between parties to a deed. From a review of the whole record we are satisfied that appellants did not meet the burden which rested upon them and that the chancellor was justified in so holding.

Appellants further assign for error that some of the numbered paragraphs of their bill of complaint were answered only by a general averment of denial and that these paragraphs were therefore admitted and that the chancellor should have so held. We have carefully examined the bill and answer and we find that every essential allegation of fact contained in the bill was answered and denied by the appellees. In Griffith's Mississippi Chancery Practice, Second Edition, Section 357, it is said: "Nor is it necessary in order to comply with the rule as to responsiveness that the defendant shall strictly adhere to the practice of formally admitting or denying seriatim the several allegations of the bill, if in point of fact or facts the terms of the answer, in actual substance, constitute a full and direct reply to the essential aver-

ments of the bill. It is the material substance of the bill that is to be answered, and it is the substance and not the form that controls as to the answer." And in Section 359 of the same work it is said "However brief and informal the answer may be, if it distinctly denies all and singular the material facts constituting the essential foundation of the suit it will be sufficient, such essential facts being thus put in issue." The answer did not fail to put in issue any of the material facts alleged by appellants and therefore did not admit those facts. The decree of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Ethridge* and *Lotterhos, JJ.,* concur.