GREEN, et al. *v.* FRAZIER, et al.

No. 42045 December 4, 1961 135 So. 2d 399

316

*William F. Riley, Berger, Callon & Zuccaro,* Natchez, for appellants.

*Laub, Adams, Forman & Truly,* Natchez, for appellees.

KYLE, J.

The appellants, Hazel V. Green and Julian J. Midies, filed their bill of complaint in the Chancery Court of Adams County against Wesley Frazier and Mattie Frazier, seeking to cancel a deed of conveyance from

one William Jenkins to Wesley Frazier and Mattie Frazier, conveying to the grantees therein a parcel of land, together with the improvements thereon, in the City of Natchez, on the ground that said deed had been procured by fraud and undue influence. The bill of complaint alleged in effect that, at the time of the execution of the deed under attack, the appellees were the confidential agents and advisers of the grantor in the deed. Before the case came on for trial Wesley Frazier died, and the suit was revived against Mattie Frazier, who was the wife and sole heir at law of the deceased Wesley Frazier, by a proper decree of the court. The defendant filed an answer in which she denied the material averments contained in the bill of complaint.

The record shows that William Jenkins, the grantor in the above mentioned deed, was 99 years of age at the time of his death on November 27, 1958; that he could neither read nor write; and yet his friends and acquaintances and those with whom he transacted business all described him as being very alert mentally, of good memory, and apparently well physically until only a few weeks before his death. The record also shows that William and his wife, Mary, owned and occupied a small tract of land on North Pine Street in the outskirts of the City of Natchez adjoining a colored residential section of the city. The land was suitable for residential uses, and beginning in the year 1946 William and Mary from time to time sold lots off of said tract of land to various purchasers for house sites. Mary died in the early spring of 1950; and since the couple had no children, William was left with no one to care for him. William, however, had some neighbors, Wesley and Mattie Frazier, who owned property at the foot of the hill near his home; and this couple undertook to look after the old man, to the extent at least of seeing that he was properly fed, that his clothes were clean, and that the living quarters which he occupied in his own home were

kept in order. William rented one half of the house to tenants who paid their rent each month; and William continued to occupy the remaining part of the house until a few weeks before his death.

William sold two or three more lots off of the small tract of land which he owned after his wife's death; and on January 5, 1952, William executed a deed of conveyance of the parcel of land on which his dwelling house was located, to Wesley and Mattie Frazier, reserving to himself a life estate in the property with the right to receive any rents or income derived from the property during his natural life. The deed from William to Wesley and Mattie recited a consideration of ten dollars and ''other good and valuable considerations'', the receipt of which was acknowledged. The deeds which William executed were prepared by attorneys under William's direction, and were properly witnessed and duly acknowledged.

The complainants, Hazel V. Green and Julian J. Midies, were a niece and a nephew, respectively, of William Jenkins, deceased; and claimed title to the property in controversy as devisees under the will of William Jenkins, deceased, dated August 1, 1950, in which the testator devised and bequeathed to the complainants all of the property that he ''might die, seized and possessed of, real, personal and mixed.''

The record shows that the deed which William executed to Wesley Frazier and Mattie Frazier on January 5, 1952, and which the complainants seek to have cancelled in this proceeding, was prepared by the attorney who had prepared a deed for William and his wife, Mary, conveying a lot to the complainant, Hazel V. Green, in 1948, and who had prepared the will for William in 1950; and each of the three instruments were signed by the attorney as a subscribing witness.

A large number of witnesses testified for the respective parties during the hearing before the chancellor;

and at the conclusion of the hearing the chancellor made detailed findings of facts and conclusions of law. The chancellor found that no confidential relation between William Jenkins and the said Wesley Frazier and Mattie Frazier had been established by the evidence; that fraud and undue influence had been charged by the complainants, but not proved; that the deed which reserved a life estate in the property to the grantor, had been duly executed and delivered; and that there was a valid consideration for the conveyance.

The appellants have assigned and argued two points as ground for reversal of the decree of the lower court: (1) That the lower court erred in finding as a fact that no confidential relationship existed between the grantor and grantee in the deed under attack at the time of the execution of said deed, and that the decree of the lower court based on that finding, was manifestly wrong and against the overwhelming weight of the evidence; and (2) that the lower court erred in admitting the testimony of the two attorneys who prepared the several deeds executed by the said William Jenkins.

██ █ We have carefully examined the record in this case, and we are of the opinion that the chancellor was correct in his finding that no confidential relationship was shown to have existed between William Jenkins, the grantor, and Wesley and Mattie Frazier, the grantees in the deed executed by the grantor to the grantees on January 5, 1952; and that the chancellor was correct in his finding that the charge of fraud and undue influence in the procurement of the deed had not been proved.

██ █ "A fiduciary relation is one in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust." Cresswell v. Cresswell, 164 Miss. 871, 140 So. 521, 144 So. 41; Central

National Bank v. Insurance Co., 104 U.S. 54, 68, 26 L. Ed. 693.

The appellants alleged in their bill of complaint that William Jenkins' affairs were left by him wholly to the charge and attention of the defendant Wesley Frazier as his confidential agent and adviser, and that while such relationship existed the defendant Wesley Frazier caused William Jenkins to execute the above mentioned deed dated January 5, 1952, without paying any consideration therefor; that the deed was procured by the defendant Wesley Frazier from the said William Jenkins through the exercise of fraud or undue influence and dominion over him; and that at the time of the execution of the deed and at all times thereafter to the date of his death, William Jenkins was unaware that he had conveyed any interest whatever in the above described property to the defendant Wesley Frazier or any other person.

After a careful reading of the record, we think there is no substantial evidence in the record to support the above mentioned charges. The record shows that William Jenkins was not engaged in any business during the period from 1946 to 1952 other than that of effecting the sale of small building lots off of the three or four-acre tract of land which he owned, and renting a part of his dwelling house which was not needed by him for his own use; and the testimony of the complainants' own witnesses shows, that the prospective purchasers of the building lots and the applicants for rental quarters in William's dwelling house dealt directly with William in the purchase of the lots and the renting of the rooms. Two of the purchasers of building lots were called to testify as witnesses for the complainants. Willie Plummer, who purchased a lot from William Jenkins on May 14, 1951, testified that his dealings were entirely with William Jenkins. Auguestine M. Johnston testified that she and her husband went

to see William Jenkins about buying a lot, in October 1951; that they talked to William about selling them a lot, and he said he wanted $500 for the lot; that they set a time for a meeting at Judge C. F. Patterson's office and closed the transaction in that office. Auguestine stated that she did not talk to Wesley Frazier about the sale of the lot, she just talked to William. Horace Williams, who was a brother-in-law of the complainant Julian Midies, testified that he rented a part of William's house in 1952 and 1953; that he paid $15 per month as rent for two rooms and the kitchen; that he paid the rent to William for several months, and William then told him to pay the rent to Wesley Frazier, who lived at the bottom of the hill.

Thomas York testified that he rented a part of William's house in 1956; that when he went to see William about renting a part of the house, William told him that he would have to see Frazier, and he would let him know later what Frazier said; and that later, after he had checked with Frazier, William told him that he could move in. York stated that he never had any dealings with Wesley Frazier and that he never knew of Wesley handling any deals for William except in that instance. York stated that he rented from William for a little longer than a year, and that he paid the rent each month to William.

As to the appellants' charges that the deed dated January 5, 1952, was without valuable or legal consideration and was procured by Wesley Frazier through the exercise of fraud, undue influence and dominion over the grantor, and that William Jenkins was unaware of the fact that he had conveyed any interest in the property to the Fraziers, those charges are refuted by the testimony of at least two of the appellants' own witnesses and several of the appellees' witnesses.

Horace Williams, who was Julian Midies brother-in-law, testified that William Jenkins told him that he

was going to let the Fraziers have the property "because they were so good to him"; that his niece and nephew "weren't doing nothing for him, and that he was going to leave it to the Fraziers." Moses Wood, who lived on a lot "just about joining" William Jenkins' property, testified that he asked Jenkins about some dirt to put in a hole on his own lot about 1955, and William told him that he would have to see Frazier about it, because he had deeded the property to the Fraziers.

William Washington, who was called to testify as a witness for the defendant, testified that William Jenkins told him in the late fall of 1952, that he had deeded the property where he was living to the Fraziers; that Frazier and his wife were taking care of him, that they looked after his laundry and saw that he got his regular meals; that he didn't have anyone else to look after him; and for that reason he had deeded the property to them. Washington stated that William's mental condition was as good as that of the average person. Harriett Hammett, another witness for the defendant, testified that William Jenkins told her that he had deeded his niece some property and that he expected her to take care of him, but she had failed to do it; and because Mattie was taking care of him, he was going to deed her and Wesley the property; that Mattie had been cleaning his house and cooking for him and seeing after him. Harriett stated that William told her sometime thereafter that he had deeded the property to Mattie and Wesley and was satisfied.

 █ This Court has held in numerous cases that proof of facts relied on to establish a constructive or resulting trust in a case of this kind must be clear and convincing. Moore v. Crump, 84 Miss. 612, 37 So. 109; Coleman v. Kierbow, 212 Miss. 541, 54 So. 2d 915; Stovall v. Stovall, 218 Miss. 364, 67 So. 2d 391; Summer v. Summer, 224 Miss. 273, 80 So. 2d 35; Lipe v. Souther,

224 Miss. 473, 80 So. 2d 471; Saulsberry v. Saulsberry, 232 Miss. 820, 100 So. 2d 593.

■■■ This Court has also held in numerous cases that the burden of establishing a confidential relationship is on the party asserting it. Cresswell v. Cresswell, supra; Wall v. Wall, 177 Miss. 743, 171 So. 675; Lawrence v. Lawrence, 217 Miss. 250, 63 So. 2d 825.

There is no convincing evidence in the record in this case to support the appellants' claim that a fiduciary relationship existed between William Jenkins and Wesley Frazier, as that relationship has been defined in the decisions of this Court. Cresswell v. Cresswell, supra; Summer v. Summer, supra; Lipe v. Souther, supra. It is not claimed that Williams was mentally incompetent. There is no substantial evidence in the record to support the appellants' charge of fraud or undue influence on the part of Wesley Frazier in the procurement of the deed sought to be cancelled. There is ample evidence in the record to support the chancellor's finding that William knew the actual effect of the conveyance, and that he executed the same voluntarily for a natural purpose and to carry out his own desires.

In view of the conclusions that we have reached on the main question it is not necessary that we discuss the appellants' second assignment of error. The appellants would not have been entitled to a decree, under the proof, if the two attorneys who prepared the several deeds referred to in the record had not been permitted to testify.

The decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Gillespie, McElroy* and *Jones, JJ.,* concur.