ROBERTSON, Justice, for the Court:
Essie Lee Jeter, other nephews and nieces, and W. H. Lineberry, a brother of Jasper Newt Lineberry, deceased, brought suit against Roy L. Culp and Perry A. Lineber-ry, Trustees under a trust agreement executed by Newt Lineberry, and other nephews and nieces of Newt Lineberry, in the Chancery Court of Calhoun County to set aside a trust agreement executed by Newt Lineberry on December 23, 1970.
*1227 The principal ground alleged for setting aside the trust agreement was that Newt’s nephews, Roy L. Culp and Perry A. Line-berry, occupied a confidential or fiduciary relationship with him and dominated or unduly influenced him in making the trust agreement.
After a 5-day trial, which produced a 7-volume record containing 1313 pages, the chancellor found that there was no confidential or fiduciary relationship existing between Newt Lineberry and his nephews, Roy L. Culp and Perry A. Lineberry, or any of the other defendants; that Roy and Perry did not dominate, influence or advise Newt Lineberry in the making of the trust agreement, but that Newt Lineberry executed the trust agreement on the advice of his tax attorney, John Pox of Houston, Mississippi, and that the agreement was a good and valid trust agreement and represented the will and wishes of Newt Lineberry alone, and that, rather than being set aside, it should be carried out according to Newt’s directions. The complainants appeal.
J. N. “Newt” Lineberry was born on October 28,1890. He was a long-time resident of Calhoun County, Mississippi, where for many years he had engaged in farming operations and the money-lending business. As a result of his industry, ability and sound business judgment, he had accumulated a very substantial estate consisting largely of real property, stocks and notes. Newt was never married and lived alone on his Calhoun County farm. At the time of his death, he had one aged brother still living and numerous nephews and nieces, all of whom are either complainants or defendants in this suit.
In the Fall of 1970, when Newt was approximately 80 years old, he became very ill and was taken to the Vardaman hospital in Calhoun County. Later he was transferred to the Veterans Hospital in Memphis, Tennessee, where he remained until his discharge on November 19, 1970. Since he was very weak as a result of his bout with pneumonia and other illnesses, he was not able to return to his home in Calhoun County and live alone, as he had done over the years, and since he needed to be close to the Memphis hospital for frequent checkups, he stayed in the home of a niece, Sue Culp Trull, in Linden, Tennessee. He remained in her home until March, 1971.
During this period from November, 1970, to March, 1971, he made frequent trips back to Mississippi to look after his property and money-lending business. Usually Roy Culp or Perry Lineberry, residents of Tennessee, drove him back to Mississippi and chauffeured him around to collect on his notes.
While he was so seriously ill and couldn’t attend to his business interests, Essie Lee Jeter and Roy Culp petitioned the Chancery Court of Calhoun County to appoint a guardian for Newt.
On October 26,1970, the same chancellor, who later heard the case at bar, appointed the Calhoun County Chancery Clerk, Guardian of Newt Lineberry. On December 4, 1970, the same chancellor discharged the guardian and closed the guardianship. In his decree he found:
“[I]t is apparent to this Court that the said J. N. Lineberry has made a complete recovery and is suffering no legal disabilities whatsoever, and as aforesaid, is entirely capable of seeing to his business and affairs.”
On December 23, 1970, Newt Lineberry had Roy Culp and Perry Lineberry drive him to the office of Paul Moore, his longtime attorney in Calhoun City, and at Newt’s direction and upon his instructions Moore prepared a will for him, carefully carrying out Newt’s specific instructions as to distribution among the various beneficiaries. Moore, Mr. E. C. Neely, III and Mr. Eugene Black witnessed the execution of this will as subscribing witnesses.
The next day, Newt Lineberry had his nephews, Roy and Perry, carry him to the office of John Fox in Houston, Mississippi, an attorney who Newt Lineberry understood to be a specialist in tax and estate matters. Mr. Fox carefully prepared a lengthy and detailed trust agreement. According to Newt’s instructions, Roy Culp and Perry Lineberry, his nephews, were *1228 named trustees. Again according to Newt’s instructions, Pox listed the thirteen beneficiaries and the exact percentage to be distributed to each. Fox testified that he and he alone advised Newt Lineberry as to the technical provisions of the trust agreement and the irrevocability of it in order to meet the requirements of the law, and the rules and regulations of the Internal Revenue Service. Fox further testified that he followed the provisions of the will prepared by Paul Moore as to beneficiaries and distribution among Newt’s brother, and specific nephews and nieces.
Both attorneys Paul Moore and John Fox testified that the will and trust agreement represented the will, directions and instructions of Newt alone.
The complainants say that the trust agreement should be set aside because:
I.The Court’s opinion is manifestly wrong particularly in which opinion the Court finds that Newt Lineber-ry was not dominated and unduly influenced by Roy Culp and Perry Lineberry in the execution of the trust.
II.The Court’s opinion is manifestly wrong, particularly in which opinion the Court finds that even though the trust agreement as executed may have been voidable, it was ratified by Mr. Lineberry and thereby made fully valid and enforceable.
III.The Court was manifestly wrong in recognizing the trust agreement as a valid and legal document and Perry Lineberry and Roy Culp cannot ask that it be upheld because they do not come to Court with clean hands.
In a long opinion, the Chancellor found:
“In my judgment there is no substantial evidence in this case that Mr. Line-berry was dominated and unduly influenced by anyone in the execution of the trust. It is also my judgment that, according to the evidence, he was mentally competent. . . . ”
In reaching this conclusion, the Chancellor reviewed the testimony of many witnesses who testified to characteristics of Newt, and observed:
“That he was an uneducated but intelligent person, sympathetic, conservative, honest, fair, a good business man, alert at all times except possibly when he was seriously ill, was liberal in making loans but not unreasonable in the terms, and wanted them repaid or extended; a pleasant person to be around.
“There was one characteristic that all or almost all of the witnesses agreed upon, and that was that he had a strong will, could not be influenced, and did not discuss his business affairs with others. Apparently he was unique, individualistic, frugal, a good business man, with a strong will and a mind of his own. I am convinced that he was not the type of man who could be easily or unduly influenced.”
We agree with the Chancellor in his size-up of Newt and his conclusion that there was no undue influence. His finding in this respect is supported by overwhelming evidence. No fiduciary or confidential relationship was found to exist, and there being no confidential relationship, no presumption of invalidity of the trust agreement arose.
The burden of proving the existence of a confidential relationship is on the party asserting it. Green v. Frazier, 242 Miss. 315, 135 So.2d 399 (1961); Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937); Cresswell v. Cresswell, 164 Miss. 871, 144 So. 41 (1932). The complainants did not meet that burden.
It is abundantly clear from all the evidence in this case that Newt Lineberry’s was ' the dominant "will and personality. Roy Culp and Perry Lineberry, his nephews, were his errand boys and chauffeurs.
Probably, after his very serious illness in October, 1970, Newt Lineberry suddenly realized that he was getting old, that he was a bachelor, that he had a very substantial estate, and that he had better take the long-ignored advice of his banker, his CPA, and his long-time lawyers, Henry Lackey *1229 and Paul Moore, that he needed to get an irrevocable trust agreement executed in order to save substantial estate and inheritance taxes, both federal and state.
Appellants next contend that the trust agreement was never made fully valid and enforceable. On April 18, 1972, Mrs. Jessie Boland, CPA and Newt Lineberry’s long-time tax consultant, at his instance and according to his instructions, prepared a detailed gift tax return and Newt paid to Internal Revenue Service $23,739.98 gift tax, and $1,436.10 interest, because of the late payment of the tax. When Newt Line-berry, a frugal, conservative and careful businessman, parted with and paid to the United States approximately $25,000 in gift taxes, he crossed the Rubicon and ratified and confirmed the trust agreement beyond a shadow of a doubt.
In their brief, appellants make this final contention:
“[T]he trust agreement executed by Newt Lineberry in the office of John Pox at a time when Perry Lineberry and Roy Culp were present was not a legal document, but to the contrary, was ‘a paper transaction’ the purpose of which was to defraud the United States Government of estate taxes which would have been due and payable upon the death of Newt Li-neberry.
“. . . Perry and Roy were very much a part of this scheme designed to circumvent the Internal Revenue Laws and the Mississippi State Tax Commission.”
While it is perhaps laudable for the appellants to seek to protect the interests of the Federal Government and State of Mississippi in the collection of estate and inheritance taxes from private citizens, it is not necessary. The Internal Revenue Service and the State Tax Commission are adequately staffed with attorneys and tax specialists, whose sole duty is to see that the tax laws of the United States and the State of Mississippi, and the rules and regulations of the Internal Revenue Service and the State Tax Commission are carefully followed in setting up trust agreements.
The decree of the chancery court, being supported by substantial evidence, is affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.