498 So.2d 809 (1986)
Edna E. NORRIS
v.
David Leroy NORRIS.
No. 56529.
Supreme Court of Mississippi.
November 19, 1986.
Harry McMain, Meridian, for appellant.
H.W. "Sonny" Jones, Meridian, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's appeal presents the novel claim by a forty year old man that he was so subject to the domination and influence of the woman who divorced him eighteen *810 months earlier that we should hold that a confidential relationship existed between the two and that the ex-wife's exaction from him of a quitclaim deed to his one-half interest in the parties' former homestead should be presumed the product of undue influence. The facts before us strongly suggest that a relationship confidential in law did exist. The ex-husband's physical and mental abilities have been greatly reduced by injuries sustained in an automobile accident and the facts otherwise reflect the ex-husband's substantial dependency and the ex-wife's substantial capacity to dominate. We affirm the Chancellor's decision setting aside the quitclaim deed.

II.
The record before us presents a sad story of three of God's creatures who unexpectedly and undeservedly have been visited by tragedy made the worse by human frailty and by the inescapable demands of endurance. For seven years David and Edna Norris lived together in a marriage which produced their allotted share of life's simple joys. In 1980 David was severely injured in an automobile accident rendering him in a comatose state for a period of time and thereafter a near invalid. For a year Edna waited on David around the clock tending to his every need. The call of duty ultimately proved too great for her, for once David regained the ability to attend to many of his personal needs, Edna determined that she could not endure the prospect of life with a permanently disabled husband. On September 15, 1982, she and David were divorced on a no-fault basis. Miss. Code Ann. § 93-5-2 (Supp. 1985).
Still in a physically and mentally weakened condition, David ultimately went to live with his mother outside of Meridian. He has recovered as much as the physiological processes will allow. His face is drawn, his speech slurred, his eyesight impaired. He is permanently disabled from his occupation as a carpentry contractor. His sole source of income is a social security disability check which slightly exceeds $400.00 each month.
Between the lines of the record before us we find story of the conflict between Edna and David's mother, Winnie Norris. Winnie condemns Edna for her refusal to stick by David. Edna resents the guilt feelings Winnie seeks to inflict upon her. David is the saddest figure of all. He obviously still loves Edna and would do anything to get her to remarry him. On the other hand, he is greatly influenced by  even fears  his domineering mother with whom he now lives.
In this context we are presented civil litigation regarding a one-half interest in the residence occupied by David and Edna prior to their divorce. The property settlement agreement incorporated into the September 15, 1982 divorce decree provided that
both parties hereto agree that the home of the parties shall be sold and that the equity derived from such sale shall be equally divided between the two parties.
More than 16 months elapsed, however, and for reasons not entirely clear the home was not sold. On the morning of January 31, 1984, Edna picked up David and drove him to the law office of Paul Abston, an attorney practicing in Meridian, Mississippi, and there David executed a quitclaim deed conveying to Edna his one-half interest in the house and the five acre tract upon which it sits. The quitclaim deed was that day lodged of record in the office of the Chancery Clerk of Lauderdale County.
The circumstances under which the quitclaim deed was executed were hotly disputed. David contends that he could not read the instrument, did not read the instrument, and was told that it was a contract for the sale of the residence to a third party. David insists that he had no idea that he was signing an instrument which would convey away his one-half interest in the house.
Edna acknowledges that she made all of the arrangements with Abston for the preparation of the quitclaim deed and that she took David to Abston's office. She contends that the idea of conveying the one-half interest in the property was *811 David's, that he fully understood and comprehended what he was doing, that Paul Abston read and explained the deed to him and that David himself read it before signing it. Again, the impression one gets reading between the lines is that at this time David was trying to get Edna to remarry him and would have done almost anything Edna asked. Knowing that his mother would have an entirely different view of the matter, David hid from her the fact that he had signed the instrument.
David contends that he first learned that he had quitclaimed his interest in the house to Edna several weeks later. David and his mother attempted to obtain the keys to the house in furtherance of efforts to sell it. According to Winnie Norris, Edna told her on the telephone, "I've got a deed right here in my hand and I won't be bringing a door key around. See you in Court, sucker."
On April 25, 1984, suit was filed in the name of David Norris in the Chancery Court of Lauderdale County, Mississippi, seeking to have the quitclaim deed of January 31, 1984, cancelled and declared for naught. The evidence suggests strongly that it was not David's decision to bring suit. His mother, Winnie Norris, acknowledged that she retained and paid counsel to represent David in the matter. In any event, the suit charged Edna with fraud and undue influence.
After plenary trial on the merits, the Chancery Court in an opinion entered April 9, 1985, rejected David's fraud claim on grounds that he had
failed to prove by clear and convincing evidence that the Defendant [Edna] had committed a fraud upon the Plaintiff [David], ... .
The court proceeded to hold, however, that on the peculiar facts of this case at and immediately prior to January 31, 1984, Edna "exercised a fiduciary and confidential relationship with ... [David]," thus creating a presumption of undue influence and casting upon Edna the burden of rebutting that presumption by clear and convincing evidence. The court then found that Edna had "failed to rebut the presumption of undue influence by clear and convincing evidence" and decreed that the quitclaim deed of January 31, 1984, "should be set aside, cancelled, and rendered void."
From the final judgment so entered, Edna has appealed to this Court. David has cross-appealed complaining, inter alia, that the Chancery Court erred in its refusal to require immediate sale of the home with division of the proceeds between the parties and in its failure to assess against Edna punitive damages and David's attorney fees.

III.
Under attack here is a gratuitous transfer from David to Edna. Lest sight be lost of the point, there is nothing per se illegal about such a transfer. A competent donor acting voluntarily and intelligently may certainly make a valid and enforceable inter vivos gift of his property. Matter of Collier, 381 So.2d 1338, 1340 (Miss. 1980); Longtin v. Witcher, 352 So.2d 808, 811 (Miss. 1977); cf. Burnett v. Smith, 93 Miss. 566, 572, 47 So. 117, 118 (1908).
The fact that the home, the five acres and the anticipated proceeds of same were divided equally between David and Edna in the divorce property settlement agreement likewise fails to inhibit David's authority to make the conveyance at issue. So long as the rights and interests of children are not substantially affected, competent, adult parties to a valid judgment of divorce may among themselves make enforceable supplementary or modification agreements regarding property or financial matters, so long, of course, as the donee does not overreach or exert undue influence upon the donor. But see, Sullivan v. Pouncey, 469 So.2d 1233, 1234 (Miss. 1985).
Edna first complains that the Chancery Court erred in deciding the case on the confidential relationship theory. She argues that the complaint charged fraud only and that the confidential relationship/undue influence theory is beyond the scope of the pleadings. Whatever merit there may *812 have been to the point in years past, it fails under our rules of civil procedure, effective January 1, 1982.
David's original Complaint charged that he had relied upon Edna and Attorney Paul Abston in their description of the paper he signed and that his signing of the quitclaim deed was "a result of undue influence exerted upon him by Defendant [Edna] Norris for the purpose of circumventing the divorce settlement agreement between the parties." Similar allegations appear in the Amended Complaint filed in November of 1984. In response to Edna's Motion for a More Definite Statement, David on January 29, 1985, alleged that at all times pertinent he was totally disabled with a condition of great mental and physical weakness, that Edna was aware of his mental and physical condition, that, as the result of Edna's nursing and caring for him, David had come to depend upon her for his personal needs and had developed a strong emotional dependency upon Edna which continued in spite of the divorce. The More Definite Statement specifically charges that Edna
did continue to enjoy a dominant, confidential relationship with the Plaintiff [David] at all times when Plaintiff [David] and Defendant [Edna] Norris were together outside the presence of Plaintiff's friends and relatives.
David also charges that he executed the quitclaim deed "as a result of the encouragement and undue influence exerted upon him by Defendant [Edna] Norris... ."
Considering the limited office of pleadings under our civil rules, we regard that David Norris' Complaint, Amended Complaint, and More Definite Statement fully charged Edna with undue influence in procuring the quitclaim deed in the context of a confidential or fiduciary relationship. Smith v. City of West Point, 475 So.2d 816, 818 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505-06 n. 6 (Miss. 1985). Put otherwise, Edna was provided more than reasonable advance notice of this charge sufficient to enable her to prepare a defense. See Universal Computer Services, Inc. v. Lyall, 464 So.2d 69, 74 (Miss. 1985).
Beyond that, at trial David, through himself, his mother and through Edna when she was called as an adverse witness, sought to establish the basics of the confidential relationship and the exercise of undue influence by Edna. The record is devoid of any objection offered on grounds that such evidence was beyond the scope of the pleadings. Under these circumstances, even if the pleadings be inadequate (which they are not), we must treat the confidential relationship/undue influence issue as having been tried by "implied consent" of the parties. Rule 15(b), Miss.R.Civ.P.; Johnson v. Franklin, 481 So.2d 812, 815 n. 4 (Miss. 1985); Mattina v. Rodolfich, 461 So.2d 751, 753 (Miss. 1984); Witt v. Mitchell, 437 So.2d 63, 67 (Miss. 1983) (concurring opinion).
The assignment of error is denied.

V.
Edna's principal assignment of error challenges the Chancery Court's holding that, as a matter of law and fact, a confidential or fiduciary relationship existed between Edna and David immediately before and at the time of the execution of the quitclaim deed on January 31, 1984.
At the outset we observe that it will be a most unusual case where, following a divorce, the relationship between ex-husband and ex-wife will be such that a year and a half later the husband will be so dependent upon the wife and repose such confidence in her that the relationship will be confidential in law. Compare Craft v. Craft, 478 So.2d 258, 262-63 (Miss. 1985); and Taylor v. Taylor, 478 So.2d 310, 312 (Miss. 1985). We have repeatedly stated, however, that a confidential relationship is not confined to any specific association of persons but arises any time there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed. See Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984); Hendricks v. *813 James, 421 So.2d 1031, 1041 (Miss. 1982). That we are not prepared to hold that there will never be a case where divorced parties will be in a confidential relationship one to the other, however, does not detract from the fact that the contention is novel. We accordingly have examined the record and the decision of the Chancery Court with care.
All issues in this case appear to have been determined on the basis of the burden of proof. In that connection, the Chancery Court was acutely aware that, with respect to the charge of fraud David bore the burden of proof by clear and convincing evidence. See Craft v. Craft, 478 So.2d 258, 263 (Miss. 1985); Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983); Franklin v. Lovitt Equipment Co., Inc., 420 So.2d 1370 (Miss. 1982). The Court also correctly noted that once the fact of a confidential or fiduciary relationship is established, a presumption of undue influence arises which may be rebutted only upon proof by the grantee/beneficiary arising to the dignity of clear and convincing evidence. Kelly v. Shoemake, 460 So.2d 811, 819-20 (Miss. 1984); Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984).
The critical question, however, the question presented by the instant assignment of error, is whether a confidential or fiduciary relationship existed between Edna and David at the time of the execution of the quitclaim deed. Subsidiary question of the quantum of proof by which that matter must be established.
This Court has held in numerous cases that the burden of establishing the existence of a confidential relationship is upon the party asserting it. Harris v. Sellers, 446 So.2d 1012, 1014 (Miss. 1984); Jeter v. Culp, 343 So.2d 1226 (Miss. 1977); Moore v. Stone, 208 So.2d 585 (Miss. 1968); Green v. Frazier, 242 Miss. 315, 135 So.2d 399 (1961); Lawrence v. Lawrence, 217 Miss. 250, 63 So.2d 825 (1953); Cresswell v. Cresswell, 164 Miss. 871, 884-87, 140 So. 521 (1932). Less clear, however, has been the definition of that burden. See Phillips v. Ford, 250 Miss. 425, 432, 164 So.2d 908 (1964).
In another context the Supreme Court of the United States has provided insightful comments.
The function of any standard of proof is to "instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." In Re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068 [1076], 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). By informing the fact finder in this manner, the standard of proof allocates the risk of erroneous judgment between the litigants and indicates the relative importance society attaches to the ultimate decision. [citations omitted]
Colorado v. New Mexico, 467 U.S. 310, 315-16, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247, 254 (1984); In The Interest of M.R.L., 488 So.2d 788, 790 (Miss. 1986).
Because charges such as those brought here invariably seek to have declared void facially valid instruments of conveyance which appear of public record, we consider that the public interest requires a high level of confidence in any judicial determination that a confidential relationship exists.[1] We recognize that our approach to confidential relationships, e.g., Murray v. Laird, 446 So.2d 575 (Miss. 1984), and specifically the imposition of the *814 clear and convincing evidence burden before the fiduciary may overcome the presumption of undue influence, at times operates to produce harsh and seemingly unfair results. Because of the severity of the burdens and penalties of the confidential relationship, we think it just that the party claiming its benefits establish clearly his entitlement.
As all know, we ordinarily refuse to reverse the factual determinations of a trial judge sitting without a jury where there is in the record substantial evidence supporting same. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). This is so whether those findings relate to matters of evidentiary fact, e.g., Edna took David to the lawyer's office, or, as here, ultimate fact, e.g., David's dependency upon Edna and Edna's capacity to dominate David were such that a confidential relationship existed. Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983).
In its opinion filed April 10, 1985, the Chancery Court reviewed the facts with great care. In the end the Court expressly found
that on January 31, 1984, the defendant [Edna] exercised a fiduciary and confidential relationship with the plaintiff [David].
The thoroughness of its consideration of the facts makes clear that the Chancery Court was wholly mindful of the high level of confidence we require in any judicial determination that a confidential relationship exists. Because there was substantial evidence in the record legally sufficient to undergird the Chancery Court's findings of evidentiary and ultimate fact necessary to the judgment, the present assignment of error is denied.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Where a party seeks by verbal testimony to establish a constructive or resulting trust to real property, we have held that such a party has the burden and that the burden is one of presenting clear and convincing evidence. Hans v. Hans, 482 So.2d 1117, 1122 (Miss. 1986); Allgood v. Allgood, 473 So.2d 416, 421 (Miss. 1985); Coney v. Coney, 249 Miss. 561, 568-69, 163 So.2d 692 (1964); Green v. Frazier, 242 Miss. 315, 323, 135 So.2d 399 (1961). See also International Order of Twelve Knights and Daughters of Tabor v. Marshall, 195 So.2d 66, 68-69 (Miss. 1967) (an action based on fraud and embezzlement, where we held that clear and convincing proof of a confidential relationship is a prerequisite to establishing a claim of fraud).